MAYOR AND ALDERMEN OF THE CITY OF SPRINGFIELD, petitioners..

Hampden.  January 20, 1920. — January 22, 1920.

Present: RUGG, C. J., BRALEY, PIERCE, & JENNEY, JJ.

*Springfield.  West Springfield Bridge.  Connecticut River Bridge Commission.
Equity Pleading and Practice,* Appeal, Exceptions.  *Bridge.  Holyoke.
Words,* " Specially benefited."

After the filing of a report and of a revised report by the commissioners appointed
under St. 1915, c. 252, for the construction and apportionment of the cost of a
bridge across the Connecticut River between Springfield and West Springfield,
the city of Holyoke moved that the report be recommitted and objected to its·
confirmation, and, upon decrees being entered denying the motion and con-
firming the report, alleged exceptions to and claimed appeals from the decrees..
This court, without deciding whether exceptions or appeals lay under the cir-
cumstances, heard and considered all points argued by the city of Holyoke on
their merits.

It was *held* that, at the hearing above described, only questions of law confined to
such alleged errors as appeared upon the face of the commissioners' reports.
would be considered.

The questions before the commissioners, whether the city of Holyoke would receive
any special benefit from the construction of the bridge across the Connecticut.
River between Springfield and West Springfield, and, if so, to what extent, were
*held* to be questions of fact on the record.

The question, what are the proportional parts of the cost of bridges between
municipalities constituting great arteries of travel which should be borne
by several cities, towns and counties, ordinarily is to be determined upon
broad considerations having reference to all the various circumstances of ad-
vantage and convenience to the municipalities respectively and to their popu-
lation, their commercial and industrial characteristics, and their ability to bear
the burden.

The geography of the neighborhood being taken into consideration, it was *held*
that there was ample ground in law for a finding by the commissioners that the
bridge across the Connecticut River between Springfield and West Springfield
specially benefited the city of Holyoke.

The commissioners above described were not required to state in their reports.
with fulness the reasons which actuated them in making their findings as to the
existence and the extent of the special benefit which the city of Holyoke would
receive from the bridge to be constructed.

In hearing the objections to the findings of the commissioners, this court made·
rational presumptions in favor of the findings and *held* that the findings should
not be set aside unless unsupported in law.

There was no error of law on the part of the commissioners above described in

receiving evidence and in hearing arguments from individuals, organizations and associations, who were not and could not become in any strict sense parties to the proceeding.

The commissioners in the proceeding above described were not required, after a recommittal of their first report, to give a new notice to the city of Holyoke, that city previously having become a party to and having appeared in the proceedings.

PETITION, filed in the Supreme Judicial Court on May 18, 1915, under St. 1915, c. 252, for the appointment of commissioners to provide for the construction and for the apportionment of the cost of a bridge across the Connecticut River between Springfield and West Springfield.

Commissioners were appointed. They filed a report which was recommitted on a petition by one of the commissioners. A further hearing then was had and a revised report was filed. Such facts, stated in the revised report, as are material to this decision are described in the opinion.

The city of Springfield moved that the revised report be confirmed.

The city of Holyoke moved that the revised report be recommitted on the following grounds:

"1. That the decision of said commission has assessed three per cent of the cost of said bridge upon the city of Holyoke, whereas the city of Holyoke will receive no benefit whatever from the construction of the said bridge.

"2. That the amount assessed upon the city of Holyoke is unreasonable and extravagant.

"3. That the city of Holyoke would have to pay a large proportion of the amount assessed upon the county of Hampden, and that the amount assessed upon the county of Hampden is unreasonable and extravagant, and that the county of Hampden will not be benefited by said amount.

"4. That the nature of the bridge decided upon is unreasonably expensive and extravagant, and not such as is required by public necessity or convenience.

"5. That the location of the bridge does not in any way accommodate travel to or from the city of Holyoke.

"6. That at the hearings of the said commissioners certain parties appeared and were heard as parties who were not proper parties in interest, to wit: the Chamber of Commerce of West

Springfield, the Court Square Bridge Association, the Eastern States Agricultural and Industrial Exposition, the Society for the Advancement of Navigation of the Connecticut River, and the Tax Payers' Bridge League.

"7. That it does not appear by the said report what proportion of travel from the city of Holyoke, if any, would be accommodated by the said bridge to be constructed.

"8. That it does not appear that the said bridge is of any necessity or convenience to the city of Holyoke, and that any travel to or from the city of Holyoke now does or has for a great many years gone into or come out of Springfield over the Old Toll Bridge, for which the proposed new bridge is practically a substitute, or that the existing bridges exclusive of the Old Toll Bridge are not fully and completely adequate and more conveniently situated to accommodate all travel to and from the city of Holyoke from the city of Springfield and town of West Springfield and any and all adjacent towns."

The city of Holyoke also filed objections to the confirming of the report which were the same as the first six grounds urged by it for its recommittal.

The motion by the city of Springfield for confirmation of the report, the objections thereto of the city of Holyoke, and the motion of the city of Holyoke for a recommittal of the report were heard by *De Courcy*, J., by whose order decrees were entered denying the motion to recommit and confirming the report. The city of Holyoke alleged exceptions, and also claimed appeals.

St. 1915, c. 252, § 5, is as follows: "The special commissioners, or a majority of them, shall make return of their decision of all the matters herein above described, to the Supreme Judicial Court for the county of Hampden. The decree of said court confirming the decision shall be final and binding."

*R. P. Stapleton,* (*E. A. Lynch* with him,) for the city of Holyoke.

*E. T. Broadhurst,* for the city of Springfield.

*E. A. McClintock,* for the town of West Springfield.

*J. B. Ely,* for the county of Hampden.

*S. Adams,* for the town of Agawam.

RUGG, C. J. This is a petition for the appointment of commissioners under an act to provide for the construction of a bridge across the Connecticut River between Springfield and West

Springfield. St. 1915, c. 252. Commissioners were appointed. A first report was recommitted to the commission by the court and after additional hearings a second report has been filed. Thereupon the city of Holyoke filed a motion to recommit the matter to the commission for further consideration and also filed objections to the confirmation of the report. Decrees were entered denying the motion to recommit, and confirming the report. No evidence is reported. The case comes before us simply upon the material parts of the two reports of the commissioners and the motion to recommit and the objections to this confirmation filed by the city of Holyoke. Without deciding whether under § 5 of said act exceptions or appeal lie to the entry of a decree by a single justice confirming the report, assumptions in that particular are made in favor of the objecting city and all points argued by it are considered on their merits.

The report of the commissioners recites that numerous hearings were held and that all interested parties were given full opportunity to present their views. It then fixes the location of the bridge and its approaches, and specifies its design, material and dimensions and makes apportionment of the costs. The report in general appears to conform to the provisions of said act.

1. The reports of the commissioners show that the city of Holyoke was represented at the hearings. It does not appear that any objections were made during the progress of the hearings or that any requests for rulings were made or that any ruling of law was made to which objection was taken or that any other questions of law were sought to be raised until after the reports were filed. Only questions of law are open for consideration. Those are confined to such errors as appear on the face of the reports.

2. It is provided by § 4 of the act that the commissioners "shall determine what cities and towns in the county of Hampden are or will be specially benefited by the erection of the bridge, and what proportional part of the cost of the bridge and of its approaches" and other expenses "shall be paid by said county and by such cities and towns respectively." The commissioners say in their report that "after notice and a hearing and consideration of the evidence," it is determined and decided that the cities of Springfield and Holyoke, and the towns of West Springfield, Westfield and Agawam "will be specially benefited by the erection of

the bridge." They then assess such cost and expense in these proportions: thirty-one per cent upon the county of Hampden; fifty-one per cent upon the city of Springfield; twelve per cent upon the town of West Springfield; three per cent upon the city of Holyoke; two per cent upon the town of Westfield, one per cent upon the town of Agawam.

It is contended that the city of Holyoke will not receive any special benefit from the construction of the bridge. The questions whether there are such benefits and if any what is their extent are questions of fact on this record. It is not necessary to define "specially benefited" as those words are used in § 4 of the act because, manifestly, whatever rational definition be given them, it cannot be said as matter of law that the city of Holyoke was not specially benefited. The determination of the proportional part of the cost of bridges between municipalities, constituting great arteries of travel, to be borne by several cities, towns and counties, is ordinarily to be fixed upon broad considerations having reference to all the various circumstances of advantage and convenience to them respectively and to their population, commercial and industrial characteristics, and ability to bear the burden. *Commonwealth* v. *Newburyport*, 103 Mass. 129. If cognizance be taken of the geography of the neighborhood, there seems ample ground in law for the finding of special benefit to the city of Holyoke as a fact. Springfield is the shire town and the most populous city in the county of Hampden in which Holyoke is located. The two cities are situated upon opposite sides of the Connecticut River and are distant about eight to ten miles from each other. Apparently the chief present line of travel both by trolley car and vehicles crosses the river at Springfield and proceeds thence up the river on its west bank to Holyoke. It seems plain that there must be a large amount of travel between the two cities. The construction of a new bridge adapted to facilitate both trolley and motor vehicle traffic between the two cities, although by a slightly longer route, well might be found to confer a special benefit to Holyoke. In this particular the report shows that the commissioners have acted within the scope of their power and have neither exceeded nor failed to exercise the authority vested in them. It is not necessary that the reasons which actuated them be stated with fulness; but clearly from all the circumstances they may have been con-

vincing in their nature. Rational presumptions are made in their favor and the findings will not be set aside unless unsupported in law. *Boston & Worcester Railroad* v. *Western Railroad,* 14 Gray, 253. *Hingham & Quincy Bridge & Turnpike Corp.* v. *County of Norfolk,* 6 Allen, 353, 359. *In re Metropolitan Park Commissioners, petitioners,* 209 Mass. 381. *Selectmen of Westborough, petitioners,* 169 Mass. 495. *De las Casas, petitioner,* 178 Mass. 213. *New York Central Railroad* v. *Public Service Commissioners, ante,* 133. The numerous cases cited in behalf of the city of Holyoke respecting the principles to be observed in the assessment of betterments upon private property are irrelevant under these conditions and need not be reviewed. No error of law appears in this respect. No mistakes are to be corrected, no appreciable change in a future report seems likely, and substantial justice does not require a recommittal. *Brackett* v. *Commonwealth,* 223 Mass. 119, 125.

3. There was no error of law on the part of the commissioners in receiving evidence or in hearing arguments from individuals, organizations and associations who were not and could not become in any strict sense parties to the proceeding. Hearings before commissioners partake of the nature of inquiries into the need, character, extent and advisability of great public improvements. *Boston, petitioner,* 221 Mass. 468, 474. It has been the custom for many years in such proceedings to allow considerable latitude in listening to all who could make a real contribution to the elucidation of the problem to be solved. Those heard frequently have been strangers to the proceeding, who could not appeal nor otherwise appear in court. Much must be left in such a matter to the sound discretion of the commissioners. *Chandler* v. *Railroad Commissioners,* 141 Mass. 208, 214. *Old Colony Railroad, petitioner,* 163 Mass. 356.

4. There was no error on the part of the commissioners in failing, if they did fail, to give to the city of Holyoke a new notice after the first report was recommitted for further consideration. That city was a party to the proceedings and had already appeared. It was therefore in court and required no supplementary notice. We do not understand that it is contended that that city was not in fact represented at every hearing at which its officials desired to be present. At all events there is nothing in the record to warrant the inference that it did not have the fullest opportunity in this respect.

5. The case has been considered in every respect open either by exceptions or by appeal from final decree. It follows that the exceptions must be overruled and the decree confirming the report of the commissioners must be affirmed.

*So ordered.*