**Chester RUDNICKI, Plaintiff,**

v.

**Edward J. McCORMACK, Jr., et al., Defendants.**

**Chester RUDNICKI, Plaintiff,**

v.

**William A. BROCKETT et al., Defendants.**

**Chester RUDNICKI, Plaintiff,**

v.

**Anthony JULIAN et al., Defendants (two cases).**

**Chester RUDNICKI, Plaintiff,**

v.

**Gilbert W. COX et al., Defendants.**

**Civ. A. Nos. 62-109, 61-897, 61-297, 61-327, 60-916.**

United States District Court
D. Massachusetts.

**Chester RUDNICKI, Plaintiff,**

v.

**Edward W. DAY, Defendant.**

**Civ. A. No. 2965.**

United States District Court
D. Rhode Island.

Oct. 1, 1962.

906

Chester Rudnicki, plaintiff, pro se.

John J. Curtin, Jr., Asst. U. S. Atty., Boston, Mass., for defendants Woodbury, Julian, Canavan, Hassett, Sweeney, Wyzanski, Caffrey, Ford, Brockett, Healy, Dakin, Chase, Mahoney, Smith and Coughlin.

Victor Brogna, Asst. Atty. Gen., Commonwealth of Massachusetts, Boston, Mass., for defendants McCormack, Cox, Kelleher and Sullivan.

Frederick W. Faerber, Jr., Asst. U. S. Atty., Providence, R. I., special appearance for defendant Day.

GIGNOUX, District Judge (serving by designation).

In each of these actions the defendants have filed motions to dismiss under Fed. R.Civ.P. rule 12(b) (6) for failure of the complaint to state a claim upon which relief can be granted. In the case of Rudnicki v. McCormack et al. the defendants have also filed a petition for an injunction permanently enjoining the plaintiff from continuing or instituting these or other similar proceedings. I shall rule first upon the motions to dismiss and then upon the petition for permanent injunction.

With the exception of the case of Rudnicki v. Brockett et al., these cases follow the same pattern. In each case, the plaintiff, believing himself aggrieved by actions of various federal and Massachusetts state court judges in prior litigation instituted by him, alleges that their judicial acts in granting motions filed by the defendants, or in refusing to grant motions filed by himself as plaintiff, deprived the plaintiff of his civil rights in violation of the Fourteenth Amendment to the Constitution of the United States, the Civil Rights Act (42 U.S.C. §§ 1983 and 1985), various of the Federal Rules of Civil Procedure and unspecified other statutes of the United States. In addition to the presiding judges in those actions, the plaintiff has joined as defendants the Chief Judge of the United States Court of Appeals for the First Circuit, because of his designation of a judge to hear these cases, the Attorney General of the Commonwealth of Massachusetts and one of his assistants, because of their representation of state court judges sued by the plaintiff, an Assistant United States Attorney for the District of Massachusetts, because of his representation of a United States District Judge sued by the plaintiff, and the Clerk of the United States District Court for the District of Massachusetts, because of his receiving and filing papers in connection with such suits. Finally, the plaintiff has filed a motion in his latest suit to add as defendants the present United States Attorney for the District of Massachusetts and one of his assistants, because of their representation of the various federal judges and other officials who are defendants in these actions.

Disregarding, as I must, the vituperative and purely conclusionary allegations with which the complaints in these actions are replete (see Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Dunn v. Gazzola, 216 F.2d 709 (1st Cir., 1954)), I can read these complaints as alleging no more than that the plaintiff has been denied recovery in the various actions instituted by him in this and the Massachusetts state courts by the adverse rulings of the presiding judges. Such allegations, in my view, wholly fail to state a cause of action under any provision of the Civil Rights Act, which is the only statute conceivably applicable to these actions.

Insofar as the judicial defendants are concerned, it has long been settled that judges, both state and federal, are immune from civil liability for their judicial acts. Bradley v. Fisher, 13 Wall. (U.S.) 335, 20 L.Ed. 646 (1871); Francis v. Crafts, 203 F.2d 809 (1st Cir., 1953), cert. denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357 (1953). This immunity extends to suits, such as the present ones, for alleged deprivation of civil rights under the Civil Rights Act, Francis v. Crafts, supra.

I am equally satisfied that, under the circumstances here disclosed, the same immunity from suit under the Civil

Rights Act attaches to the non-judicial defendants in these actions. There can be no question but that the acts of which the plaintiff complains were performed by these defendants in discharge of their official duties, it being the duty of the United States Attorney for the District of Massachusetts and his assistants to represent federal judges and officials when sued in their official capacities; it being the duty of the Attorney General of the Commonwealth of Massachusetts and his assistants to represent Massachusetts state judges and officials when sued in their official capacities; and it being the duty of the Clerk of the United States District Court for the District of Massachusetts to receive and file papers submitted to his office in pending litigation. Meredith v. Van Oosterhout, 286 F.2d 216 (8th Cir., 1961), cert. denied, 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745 (1961); Ginsburg v. Stern, 125 F.Supp. 596 (W.D. Pa.1954), aff'd on other grounds, 225 F.2d 245 (3d Cir., 1955). Such cases as Kostal v. Stoner, 292 F.2d 492 (10th Cir., 1961), cert. denied, 369 U.S. 868, 82 S.Ct. 1032, 8 L.Ed.2d 87 (1962), Dunn v. Gazzola, supra, Francis v. Lyman, 216 F.2d 583 (1st Cir., 1954) and Rhodes v. Houston, 202 F. Supp. 624 (D.Neb.1962), make clear that public officials such as these, when performing their official duties, enjoy the same immunity from civil liability as that extended to judges in the performance of their judicial functions. See also Barr v. Matteo, 360 U.S. 564, 571–574, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Gregoire v. Biddle, 177 F.2d 579 (2d Cir., 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L. Ed. 1363 (1950).

■ The case of Rudnicki v. Brockett requires separate comment, inasmuch as the defendants in that action are not judges, judicial officers or attorneys. The complaint in that case alleges that the defendants, all of whom were personnel of the Boston Naval Shipyard, conspired to deprive plaintiff of his right to employment at the Shipyard in violation of the Fourteenth Amendment, the Civil Rights Act (42 U.S.C. §§ 1983 and 1985), the U. S. Civil Service Commission Code, the United States Navy Civilian Personnel Code and other unspecified statutes. Of these, 42 U.S.C. § 1985(3) is the only statute which could have any possible application to this action. However, even to the extent that the complaint in this case can be read as purporting to state a cause of action under 42 U.S.C. § 1985(3), it is patently defective in at least two respects. First, it seems clear that the plaintiff has failed to assert, and cannot assert, that any of the defendants were acting under color of state law. Hoffman v. Halden, 268 F.2d 280, 291 (9th Cir., 1959) and cases collected therein; Koch v. Zuieback, 194 F.Supp. 651 (S.D.Cal.1961). In addition, it is settled that one is not entitled to federal employment as a matter of right. Jason v. Summerfield, 94 U.S.App. D.C. 197, 214 F.2d 273 (1954), cert. denied, 348 U.S. 840, 75 S.Ct. 48, 99 L.Ed. 662 (1954).

For the foregoing reasons, the motions to dismiss are granted, and the actions are dismissed.

I turn now to the petition for permanent injunction filed by the defendants in the case of Rudnicki v. McCormack et al. These defendants have requested that this Court under the authority vested in it by the "All Writs Act", 28 U.S.C. § 1651, issue an order permanently enjoining the plaintiff from continuing, commencing or prosecuting this or any other proceeding against these defendants or against any judge or attorney participating in this case for actions taken in the course of their duties as judges or attorneys. These defendants have also moved that in order to protect the records of this Court from frivolous, irrelevant, vexatious, superfluous and unimportant papers, the Clerk be directed to refuse to receive, file or docket any papers submitted by Mr. Rudnicki in this or any other proceeding against these defendants or any judge or attorney, without an order of Court. In support of the motion, the defendants have filed the affidavit of John J. Curtin, Jr., Esq., Assistant United States Attorney for the District of Massachusetts, setting forth the results of his examination of the

various records in the files of the Department of Justice concerning cases brought by Mr. Rudnicki during the last three years in this court against federal and state judges and officials. During oral argument, counsel have also called to my attention various other proceedings of a similar nature previously brought by Mr. Rudnicki during the last several years in the Massachusetts state courts.

After an examination of Mr. Curtin's affidavit and of the records of this Court concerning the litigation instituted by Mr. Rudnicki since 1960, of which I take judicial notice, I have determined that the time has come when it is necessary and appropriate that an injunction issue, both for protection of these and other public officials against unwarranted harassment, and for the protection of the records of this and other courts against the filing of frivolous and unimportant papers.

The affidavit of Mr. Curtin and the records of this Court reveal a pattern of conduct by Mr. Rudnicki, in which he has persistently attempted to relitigate cases dismissed by United States District Judges and by Massachusetts state judges by commencing new suits against those judges and against the government attorneys who represented them, charging them with conspiracies to violate his civil rights. On their face, these suits have been baseless, vexatious and repetitive, and in each instance they have been dismissed upon appropriate motions filed by the defendants. In these suits, Mr. Rudnicki has joined as defendants (and the list may not be complete) a Massachusetts District Court Justice, a Massachusetts Superior Court Justice, all five of the United States District Court Judges for the District of Massachusetts, the United States District Court Judge for the District of Rhode Island, the Chief Judge of the United States Court of Appeals for the First Circuit, the Attorney General of the Commonwealth of Massachusetts and one of his assistants, the United States Attorney for the District of Massachusetts and two of his assistants, the Clerk of the United States District Court for the District of Massachu-

setts, and the Commandant and six other officers or employees at the Boston Naval Shipyard. As the result of his actions, the Chief Judge of the United States Court of Appeals for the First Circuit, the five United States District Judges for the District of Massachusetts and the United States District Judge for the District of Rhode Island have felt compelled to recuse themselves from further participation in these cases, and it has been necessary for an Acting Chief Judge of the United States Court of Appeals for the First Circuit to designate me, the United States District Judge for the District of Maine, to hear them. In these actions the ad damnum sought by the plaintiff has ranged from $25,000, the damages sought of certain of the employees of the Boston Naval Shipyard, to $6 million, the judgment sought against the Chief Judge of the United States Court of Appeals for this Circuit in the most recent action, the only participation by the Chief Judge of this Court in this litigation having been his designation of the United States District Judge for the District of Rhode Island to hear these cases, when all five resident judges in the District of Massachusetts had felt compelled to disqualify themselves.

I have little question, under the circumstances disclosed, as to my power, whether under the All Writs Act, or in the exercise of my inherent equity jurisdiction, or in the exercise of my power to supervise the orderly administration of this court, to direct that an injunction issue.

While counsel have not brought to my attention, nor has my own research disclosed, any case which may stand as a precise precedent for the issuance of such an order by a federal district court, analogies are not lacking. Thus it has long been settled that a court of equity may enjoin the institution of repetitious and baseless litigation. The ancient bill of peace had this as one of its purposes. See 1 Pomeroy, Equity Jurisprudence 246, 261j (5th ed. 1941); Stafford, Equity 414 (1934). As early as 1709, the

English court acted to grant an injunction against the commencement of suits contesting matters which had been settled in previous litigation. Earl of Bath v. Sherwin, 4 Brown's Parl.Cas. 373 (1709). In more recent times, this power was affirmed, and perhaps extended, in England by the Vexatious Actions Act, 59 & 60 Vict. c. 51, which authorized the High Court to enjoin the bringing of further actions by "any person (who) has habitually and persistently instituted vexatious legal proceedings without any reasonable ground   *   *   * "

The English Courts have not hesitated to exercise the power thus vested in them by restraining what Professor Chafee refers to as "pertinacious litigants" from abusing the process of the courts by the repeated institution of frivolous litigation. Chafee, Cases on Equitable Remedies 222 (1938). Professor Chafee refers to a number of cases in which the English courts and other courts of the British Commonwealth have exercised this power. Among these is In re Dalton, The Times (London), Jan. 17, 1927, in which the High Court sustained an order of a divisional court restraining a Mrs. Dalton from instituting any further actions against public officials without prior order of the court. Within the previous four-year period Mrs. Dalton had issued writs against between 40 and 50 different persons, including two king's counsel, two junior barristers, two justices of the peace, a number of solicitors, their managing clerks, and others. Only two of these actions had come to court, the rest having been stricken and dismissed as frivolous or withdrawn at earlier stages, and the two which had come to court having been withdrawn from the jury by the presiding judge. Professor Chafee also abstracts the case of Davison v. Colonial Treasurer, 47 New So. Wales Weekly Notes 19 (In Chambers, 1930), in which the court ordered stricken a declaration which contained no cause of action and which had been filed by a plaintiff who had frequently attempted to bring unfounded actions against officials in public departments. In that case the court entered an order restraining the plaintiff from filing any further declaration in, or substantially in, the same form.

The courts of the United States have also acted to enjoin a litigant from subjecting another to repeated, baseless and vexatious suits on the same subject matter, recognizing without question that such a course of conduct is a sufficient ground for the issuance of an injunction. Clinton v. United States, 297 F.2d 899 (9th Cir., 1961), cert. denied, 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14 (1961); Meredith v. John Deere Plow Co., 261 F.2d 121 (8th Cir., 1958), cert. denied, 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 (1959). The action which I propose to take also finds support in a line of cases in this Commonwealth which assert the power of a court, not only to protect an individual litigant from harassment, but to protect its own records from irrelevant, unimportant and superfluous papers. Rines v. Clerk of Courts for County of Norfolk, 332 Mass. 527, 126 N.E.2d 124 (1955), appeal dismissed, 350 U.S. 877, 76 S.Ct. 135, 100 L.Ed. 775 (1955); Thorndike, Petitioner, 257 Mass. 409, 153 N.E. 888 (1926).

In my view, the authorities and principles to which reference has been made leave little doubt as to the power of this Court to protect these litigants from repeated and purely vexatious suits, and to protect itself from unwarranted and patently frivolous impositions upon its jurisdiction. Certainly, upon the record which is before me with respect to this litigation, the time has come for the entry of an order which will terminate it, and will prevent further abuse of the process of the courts by this plaintiff. Surely, if the authorities and principles which have been cited do not constitute sufficient precedent for the issuance of an injunction in this case, it is time that such a precedent should be made.

I make the following findings and direct entry of the following order:

I find that Chester Rudnicki, the plaintiff in this action, has during the last three years repeatedly instituted ground-

less actions against the judges of this Court, judges of the Massachusetts state courts, other officers and employees of the federal and Massachusetts state governments, the Chief Judge of the Court of Appeals for this Circuit, and the United States District Judge for the District of Rhode Island. I find that the plaintiff has never had, and can never have, on any possible legal theory, under the facts properly pleaded in the complaints in these actions, any cause of action for violation of the Civil Rights Act, or any other claim, against the defendants herein upon which relief could be granted. I find that the institution of these baseless actions has resulted in harassment of the defendants and expense to the governments which they represent, as well as a burden upon the office of the Clerk of this Court, because of the necessity of receiving, filing and processing these lawsuits and the multitude of purely frivolous papers for which the plaintiff has been responsible. I further find that unless an injunction issues, the plaintiff will continue to institute groundless and purely vexatious litigation both against these defendants and against other judges and public officials, the effect of which will be to cause further harassment of these officials, further expense to the governments which they represent, and further burden upon the offices of the clerks of the courts in which such proceedings are initiated. I find that the issuance of an injunction in the form hereinafter set forth is necessary and appropriate for the protection of these and other public officials from groundless and vexatious litigation, and for the protection of this and other courts from the burden of receiving, filing and processing frivolous papers. Accordingly, I shall enter an order perpetually enjoining and restraining the plaintiff, Chester Rudnicki, from continuing, instituting or prosecuting, without prior leave of court, this or any other legal proceedings in any court against any state or federal judge, officer or employee for actions taken in the course of their official duties as such judge, officer or employee.

I want to make clear that it is not the intent of this order that the plaintiff be prevented from bringing any substantial action which he may have at any time, but rather to require that before any further action is instituted by him, he satisfy a judge of the court in which the action is to be commenced that his action presents at least a prima facie case and will not constitute a further abuse of the process of the court.

While the injunction to be issued is somewhat broader in scope than that sought by the motion presently before the Court, I deem such an order both necessary and proper in the circumstances which have been disclosed.

The motion of these defendants also requests that I enter an order directing the Clerk of this Court to refuse to receive, file or docket any papers submitted by the plaintiff in this or any other proceeding against these defendants or against any judge or attorney, without an order of court. Since I am serving in these cases under a limited designation, I do not feel it appropriate for me to issue an order which would appear to fall within the administrative jurisdiction of the resident judges of this District. I do, however, recommend to the Chief Judge of this District that in order to protect the records of this Court from frivolous, irrelevant, vexatious, superfluous and unimportant papers, an order be entered by the judges of this Court directing that the Clerk of this Court refuse to receive, file or docket, without an order of Court, any papers submitted by or on behalf of the plaintiff, Chester Rudnicki, in this or any other proceeding against any federal or state judge, officer or employee for actions taken in the course of their official duties as such judge, officer or employee.

Although the plaintiff is not personally present in court, I shall state on the record that if the plaintiff feels aggrieved by any order entered by me this day, his recourse is by appeal rather than by the institution of further actions, and he is specifically warned that the insti-

912

tution of any such actions will subject him to the penalties of contempt for violation of the injunction which is being issued forthwith. The Court will ask Mr. Curtin to insure that the plaintiff is informed of my various rulings this date, of the issuance of the permanent injunction and of my last statement. I shall also appreciate the assistance of Mr. Curtin, Mr. Brogna and Mr. Faerber in drafting the various orders necessary to implement the foregoing rulings.